DONALD W. FITZGERALD, State Bar No. 095348
JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
e-mail: dfitzgerald@ffwplaw.com
e-mail: jrios@ffwplaw.com

Proposed Attorneys for Tollenaar Holsteins,
a California general partnership

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>TOLLENAAR HOLSTEINS, a California general partnership,<br><br>Debtor. | CASE NO.: 15-20840-B-11<br>Chapter 11<br>DCN:  FWP-2<br><br>Date:,        February 6, 2015<br>Time:        3: 00 p.m.<br>Judge:       Hon. Christopher D. Jaime<br>Courtroom: 32, Department B |

**DECLARATION OF TAMI TOLLENAAR IN SUPPORT OF
MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND FOR
AUTHORITY TO PAY PREPETITION WAGES, COMPENSATION AND UTILITIES**

I, Tami Tollenaar, hereby declare and represent as follows:

1.     I am a general partner of Tollenaar Holsteins, a California general partnership (the "Debtor") with my husband Jon Tollenaar.  We each have over 30 years' experience in the dairy business.  I am familiar with the Motion for Authority to Use Cash Collateral and for Authority to Pay Prepetition Wages, Compensation and Utilities ("Motion") and budgets filed in support of the Motion, and attest to the fact that the information contained therein is true and correct to the best of my knowledge.

2.     In the ordinary course of my work, I regularly review, work with, and rely upon the books and records of the Debtor, including legal documents, contracts, purchase orders, notes, correspondence, accounts records, and reports which have been prepared by me or other

1  employees or representatives of the Debtor in the ordinary course of business.

2      3.    I am familiar with the Debtor's books and records with regard to the Debtor,
3  which are maintained and prepared in the ordinary course of business, as well as the Debtor's
4  business and financial affairs and history.

5      4.    I am informed and believe that Bank of the West asserts a security interest in the
6  Debtor's milk and cash in the debtor's accounts.  A.L. Gilbert Company, Associated Feed,
7  Gavilon, LLC, Foster Farms, Penny Newman and Mesa Verde (collectively, the "Feed
8  Suppliers") are all feed suppliers that are owed money by the Debtor and who may assert dairy
9  liens (Bank of the West and the Feed Suppliers are collectively referred to herein as the "Secured
10 Creditors").  By the Motion the Debtor seeks to grant the Secured Creditors replacement liens to
11 the same extent validity and priority as their existing liens on the cash collateral to be used as
12 adequate protection for the use of cash collateral.

13     5.    I make this Declaration in support of the Motion which I have read and reviewed.
14 I hereby adopt each of the factual allegations in the Motion and incorporate them in this
15 Declaration by reference.  Except as otherwise indicated, all statements in this Declaration are
16 based upon my personal knowledge, my review of relevant business documents, or my opinion.

17     6.    The Debtor operates a dairy in Elk Grove, California.

18     7.    The Dairy operates on property owned by my husband, Jon Tollenaar.

19     8.    The Dairy currently operates with approximately 500 milking cows plus dry cows,
20 heifers, bulls and the usual personal property.

21     9.    The Debtor is a member of Hilmar Cheese, and the Debtor ships its milk to that
22 processing facility.

23     10.    Attached to the Exhibit Document filed with this Declaration as Exhibit A is a
24 budget listing (the "Budget") of the cash collateral the Debtor seeks authority to use for the
25 periods of February 4, 2015 to February 28, 2015 (the "Budget Period"). The Budget was
26 prepared by me and is believed to be conservative.

27     11.    The milk check that the Debtor should be receiving from its creamery as of
28 February 14, 2015 should be in the amount of approximately $40,000.  The Debtor should be

receiving approximately $20,000 to $40,000 from the creamery on February 28, 2015. The range is due to the fact that the Debtor is liquidating its dairy herd, so milk production, creamery checks and operational expenses would decrease as cows are sold. The Debtor also receives money for selling cull cows, which are culled in the ordinary course of business.

12. The Debtor currently employs 7 persons, who work full time on the dairy together with me and my husband who work for the Debtor and the Debtor's affiliates.

13. In order to continue to operate and formulate a Plan, the Debtor has an immediate need for use of cash collateral. The Budget attached to this Declaration sets out the amounts of money the Debtor needs for the Budget Period.

14. By operating and liquidating, I believe that the Debtor will produce and generate new milk proceeds and sales proceeds that have a value greater than the amount of cash collateral sought to be used. The funds will also preserve and protect the herd and related collateral.

15. The Debtor seeks authority to use cash collateral to provide funding needed to operate and maintain the business and to pay critical expenses. It is extremely important that the funding be allowed as without it the Debtor will not be able to purchase feed for its dairy cows. The Debtor will also be unable to pay employee wages and this will cause the Debtor to lose its workforce.

16. The Debtor runs 2 shifts and milks its cows 2 times per day.

17. Denial of the use of cash collateral will not benefit any creditor constituency but it would cause significant harm to the Debtor's business operations.

18. As adequate protection for any potential decline in value, the Debtor agrees that the Secured Creditors should have replacement liens.

19. The Debtor seeks to grant a replacement lien to the extent of cash collateral actually used on assets of a like nature to those held on the Petition Date.

20. The Debtor is unaware of any secured creditors having perfected liens or perfected security interests in the subject cash collateral except the Secured Creditors. However,

the Debtor does seek authority to use cash collateral of any such creditor, if any, provided the creditor was served with notice of the Motion. I believe that it is in the best interests of the creditors of this estate, and the Debtor, to be allowed to use cash collateral. Without use of cash collateral the Debtor will be forced to shut down.

21. The Debtor further requests authority to pay employee obligations, employee deductions and employee expenses (the "Employee Compensation") and all utility expenses (the "Utilities") as included in the Budget, including amounts owed for services or utilities delivered pre-petition. The Debtor believes that such amounts would be entitled to priority claim status under the provisions of section 507(a) or otherwise require adequate assurance under section 366 and that payment of the pre-petition Employee Compensation and Utilities is necessary to the continued operation of the Debtor's business.

22. The last payroll was due on Sunday, February 1, 2015 and could not be paid because Bank of the West had frozen the Debtor's accounts. If such payments are not made, there is a substantial risk of loss of employees or utility service that would result in the Debtor's inability to operate its business or care for its cows. I am informed and believe that the Debtor's employees have very limited means and income, so that they need payment of their wages to continue working for the Debtor.

The above facts are within my personal knowledge and if called upon to testify at any hearing regarding this matter, I would so testify. I am over the age of 18 and I have signed this Declaration this 6 day of February, 2015 at Elk Grove, California.

*/s/ Tami Tollenaar*
TAMI TOLLENAAR