**6**

Richard A. Lapping (SBN: 107496)
Law Office of Richard A. Lapping
540 Pacific Avenue
San Francisco, CA 94133
Telephone:    (415) 399-1015
Facsimile:    (415) 399-1038
Richard@LappingLegal.com

*Proposed* Attorney for Russell K. Burbank
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>TOLLENAAR HOLSTEINS,<br><br>  Debtor. | Lead Case No.: 15-20840-B-11<br>Jointly administered with<br>Case Nos. 15-20842-B-11 and<br>15-20844-B-11<br><br>Chapter 11<br><br>DCN: RAL-3<br><br>**MOTION FOR AUTHORITY TO SELL LIVESTOCK LOCATED IN CALIFORNIA AND OKLAHOMA BY PRIVATE SALE FREE AND CLEAR OF LIENS OR INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      April 14, 2015<br>Time:      9:30 a.m.<br>Judge:     Hon. Christopher D. Jaime<br>Courtroom: 32, Department B |
| In re:<br><br>FRIENDLY PASTURES, LLC,<br><br>  Debtor. | |
| In re:<br><br>T BAR M RANCH, LLC,<br><br>  Debtor. | |
| ☒ Affects ALL DEBTORS<br>☐ Affects only Tollenaar Holsteins<br>☐ Affects only T Bar M Ranch, LLC<br>☐ Affects only Friendly Pastures, LLC | |

Russell K. Burbank (the "Trustee"), the Chapter 11 Trustee in the above captioned bankruptcy cases of the respective debtors (the "Debtors"), hereby moves the Court (the "Motion") for an order authorizing the Trustee to sell all livestock of the Debtors presently located in or near Elk Grove California and near Hendrix, Oklahoma, by private sale at posted or listed market prices for beef and dairy cattle prevailing in or near each sale location on the date of the sales.

1

Law Office of Richard A. Lapping
540 Pacific Avenue
San Francisco, CA 94133

1. There are presently approximately 97 head of cattle located in California and approximately 1,150 head of cattle in Oklahoma, all of which will be sold pursuant to the Motion. This is the second motion for authority to sell cows, the first of which was approved on February 17, 2015. The Trustee proposes to conduct the sales in California along the same lines as the previous sale, i.e., by selling the cattle to established third party purchasers at set prices, subject to further investigation as to potential purchasers. The Trustee understands that these and similar third party purchasers are engaged in the business of buying beef and dairy cattle, and will consult with the Debtors and the Bank of the West (the "Bank") in all such sales to decide on the best and highest prices to be obtained.

2. The Bank, which asserts a first priority perfected security interest in the livestock has consented to and requested these proposed sales. All proceeds of the sales will be deposited in the Trustee's bank accounts for the applicable Debtor and retained pending further order of the Court. Due to the circumstances, the Trustee also requests that the stay imposed by Bankruptcy Rule 6004(h) upon orders authorizing the use, sale or lease of property be waived in order to allow the sales to proceed expeditiously. The Trustee is aware of no prejudice that would be caused by the Court's waiver of Bankruptcy Rule 6004(h).

3. The Trustee also seeks authorization for Hartford Life and Accident Insurance Company ("Hartford"), which asserts a second priority perfected security interest in the livestock, to redeem any of the Debtors' livestock by paying to the Trustee the same market price, whereupon such redeemed livestock shall be subject to Hartford's first priority security interest, and the proceeds deposited in the Trustee's bank accounts for the applicable Debtor and retained pending further order of the Court.

4. Reserving all rights to contest any aspect of the claimed security interests by the Bank or Hartford or any other party, the Trustee proposes that the Court grant replacement liens to the Bank and Hartford and any other party asserting a lien or an interest in the cash sale proceeds for each Debtor to the same extent, validity and priority as the secured parties hold on the livestock. The Trustee will deposit all proceeds in the bank account of the applicable debtor/seller and retain them pending further order of the Court.

5. This Motion is based on background and points and authorities set forth below, the Notice of Motion, the Declaration of Russell K. Burbank, the complete record and files in these cases, the representations and arguments of counsel to be made at the hearing of the Motion, and on such other and further evidence and matters as may be presented to the Court in connection with the Motion.

6. The Motion, Notice of Hearing and Declaration of Russell K. Burbank have been or will be served electronically on all parties that have consented so such service, and will be served by mail on the Debtors, the equity owners of the Debtors, all creditors, all secured creditors, all taxing agencies, all parties that have requested notice, and the Office of the United States Trustee.

## BACKGROUND

7. On February 4, 2015, Debtors filed voluntary petitions with the United States Bankruptcy Court, Eastern District of California. On March 17, 2015, an order was entered in the bankruptcy case appointing a trustee and on March 23, 2015, the United States Trustee appointed Russell K. Burbank as the Trustee.

8. Upon his appointment, the Trustee engaged counsel and on Tuesday, March 24, 2015 telephonically interviewed respective counsel for the Debtors, secured creditor Bank of the West ("Bank"), and secured creditor Hartford by telephone. The Trustee and counsel also conferred with brokers regarding the potential sale of the dairy properties. The Trustee and counsel met with Tami Tollenaar and Debtor's counsel, Jason Rios, in Sacramento, and then the Trustee inspected the Elk Grove dairy farm on Friday, March 27, 2015. On Monday, March 30, 2015, the Trustee flew to Dallas and met with Jon Tollenaar at the dairy farm near Hendrix, Oklahoma. On Wednesday, April 1, 2015, the Trustee and counsel conferred with counsel and representatives of Hartford and then the Bank, in addition to counsel's conferences with individual counsel for Jon and Tami Tollenaar, the principals of the Debtors, and with counsel for Cornelis Tollenaar, the holder of a deed of trust on the larger of the two parcels.

9. The Trustee has also performed administrative tasks, including opening bank accounts for each of the Debtors and effecting the transfer of all cash to these accounts except for $50,000 which was earmarked for a payroll that the Trustee could not timely accomplish and for

Law Office of Richard A. Lapping
540 Pacific Avenue
San Francisco, CA 94133

payment of other approved expenses pending full transition of banking and payment responsibility to the Trustee.

10. All parties in interest appear to agree that the Bank has a first priority perfected security interest in the cows and the proceeds of any sale of milk products or the cows themselves, except that Tami Tollenaar asserts ownership over several head of Ayrshire cows. The Trustee believes that Tami Tollenaar does not oppose sale of the Ayrshire cows, and will keep track of the proceeds for further resolution of their ownership and the Bank's claim to them. Hartford appears to have a junior lien on the cows, but it is not going to be in the money on any sale given the size of the Bank's unpaid secured claims.

11. The Trustee is advised that the Bank consents to the Trustee's present use of its cash collateral pursuant to the interim cash collateral order and budget with modifications as requested by the Trustee pursuant to a proposed budget that the Trustee will present in due course. One such modification agreed to by the Bank is to fund during the Trustee's tenure commencing March 23, 2015 a monthly salary of $5,000 for Tami Tollenaar to supervise the operations of Tollenaar Holsteins in Elk Grove and a monthly salary of $5,000 for Jon Tollenaar to supervise operations at T Bar M Ranch LLC in Oklahoma pending sale of the cows.

12. The Bank has expressed concerned about the condition and potential deterioration of its livestock collateral and the level of expense needed to operate each dairy farm, which has exceeded and is expected to exceed revenue collected. In order to maximize the value of these cows, the Trustee has agreed to cooperate with the Bank to sell the cows expeditiously at their market price, which varies depending on whether the cow is sold as a dairy cow or for beef. The Trustee understands from his own experience as well as information from the Debtors and the Bank's agricultural staff that local market prices are set based on weight where the cow is sold for beef, and other attributes such as age and condition when sold as a dairy cow. The Trustee understands that there are also market prices for calves.

13. The Trustee would prefer to reduce the herd at each location to a minimum number needed to preserve operations and permits as a dairy farm, so as to create the possibility of a sale of each dairy as a going concern, and possibly to restructure and reorganize around the Oklahoma dairy

1  farm. However, the Bank has made it clear that it will not consent to the continued maintenance of

2  any of its livestock collateral at its expense as the only purpose would be, in California, to increase

3  the value of land owned by the Tollenaars individually and subject to the liens of Hartford as to one

4  parcel, and Cornelis Tollenaar, as to the second parcel. Likewise, in Oklahoma, the land is owned

5  by the Debtor, but subject to a lien in favor of Hartford.

6      14.    The Trustee has proposed to Hartford that it purchase or fund the purchase of the

7  cows needed to preserve the dairy farm permits in aid of the foregoing process, and now awaits

8  Hartford's response. The Motion provides one method to enable Hartford to participate which is to

9  redeem some of the Bank collateral at the established local market prices. The Trustee intends to

10 continue with reasonable efforts to pursue an operating solution that will preserve some ongoing

11 value for these estates beyond that of a liquidation.

12     15.    The ultimate rational for requesting authority for these sales are that in private sales

13 as requested, the Trustee can pursue the highest and best market prices with the assistance of the

14 Tollenaars, whose interests are aligned with value preservation, as opposed to abandoning the

15 collateral to the Bank or acquiescing in a motion for relief from stay, in either scenario losing control

16 of the sale process and proceeds and abandoning any chance of a reorganization or going concern

17 sale.

## MEMORANDUM OF POINTS AND AUTHORITIES

19     16.    Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 authorize a debtor

20 or trustee to sell assets of the estate other than in the ordinary course of business, after notice and a

21 hearing. See, e.g., In re Quintex Entertainment, Inc., et al, 950 F.2d 1492, 1495 (9th Cir. 1991). In

22 accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of

23 business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1).

24     17.    The Ninth Circuit Bankruptcy Appellate Panel in Walters v. Sunwest Bank (In re

25 Walters), 83 B.R. 14, 15-16 (B.A.P. 9th Cir. 1988) applied a flexible, case-by-case test to determine

26 whether a sound business purpose justifies a proposed sale under Section 363(b) of the Bankruptcy

27 Code. Adopting the reasoning of the Fifth Circuit in Institutional Creditors of Continental Air Lines,

28 Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir.

1986) and the Second Circuit in In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983), the Panel noted that whether a proffered justification is sufficient will depend on the specifics of the case. The Court should consider all salient factors pertaining to the case and act to further the diverse interests of the debtor and creditors alike. Id.

18. The courts have long recognized that where a sale by a debtor is made in good faith and upon a reasonable basis – as the proposed sale is here – "[t]he court will not entertain objections to a trustee's conduct of the estate." In re Curlew Valley Assocs., 14 B.R. 506, 513-514 (Bankr. D. Utah 1981). See also In re Southern Biotech, Inc., 37 B.R. 318, 322-23 (Bankr. M.D. Fla. 1983). This is because it is the "Trustee, not the Court, [that] is selling [the] property." In re Gulf States Steel, Inc., 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

20. Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the Trustee may sell property free and clear of a lien or interest in such property if, among other things, the interest in such property to be sold is in bona fide dispute, or the entity asserting an interest consents. See 11 U.S.C. § 363(f)(2) and (4). In this case, the Trustee is permitted to sell free and clear because the Bank has consented. Alternatively, the Trustee is unaware of and disputes any other alleged interest that may be asserted to the livestock that are subject of the Motion. Section 364(f)(4) permits sale in the event of a dispute, which the Court is not required to resolve in order to approve the sale. See In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991).

21. In accordance with Walters and the foregoing cases, the Trustee submits that there is valid business justification and good business reason for the proposed private sale of the livestock on prevailing market terms. As such, the Trustee believes the Court should authorize him to conduct and finalize the sales.

**CONCLUSION**

For the foregoing reasons, the Trustee requests that the Court grant the Motion and allow the Trustee to coordinate the sale of the Debtors' livestock at private sales as requested.

Dated: April 6, 2015     LAW OFFICE OF RICHARD A. LAPPING

By:  /s/ Richard A. Lapping
     Richard A. Lapping
     Attorney for Russell K. Burbank,
     Chapter 11 Trustee